UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

v.   Docket No. 21-60039-CR-SINGHAL(s)

**SHANTERIA BARNES,**

      **Defendant.**

_____/

## OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT (PSR) AND MOTION FOR DOWNWARD VARIANCE

COMES NOW the Defendant, Shanteria Barnes, by and through undersigned counsel, moves this Honorable Court to consider the following objections to the defendant's presentence investigation report (PSR), which was disclosed and made available to the parties on November 10, 2021. The Defendant's sentencing hearing is currently set for March 31, 2022.

According to the Defendant's PSR, the probation officer has calculated the defendant's total offense level to be 43 (See paragraphs 89 and 155) and her **advisory** guideline imprisonment **range** to be **life imprisonment**. The defendant understands each count of conviction (Counts One and Two) carry a statutory maximum penalty of life imprisonment; however, while Count One has no statutory minimum term of imprisonment, Count Two has a minimum mandatory term of 15 years, which equals 180 months.

In summary, the Defendant disputes a couple of the specific offense characteristics (hereinafter referred to as "SOCs") being applied to her offense level. While she acknowledges the seriousness of her conduct, she argues that her total offense level should be lower than as suggested in the PSR, and that **her advisory**

**guideline term should not be life imprisonment**, praying the Court agrees with her position. Additionally, the defendant will elaborate the reasons why her personal characteristics and efforts to cooperate suggest she is deserving of a downward variance from the advisory guideline range.

### **Objections to Paragraphs 65 and 74 of the PSR:**

The probation officer has included the same enhancement as to each "groups" representing each victim (Victims One and Two) based on her opinion the minor was "otherwise in the custody, care or supervisory control of the defendant" at the time of the offense. Each SOC or enhancement results in a two-level increase to her offense level, pursuant to § 2G1.3(b)(1)(B). It appears that each might have temporarily lived with the defendant or been provided shelter by her at one point, however, Victim One was a runaway who had been reported to the police as a missing person by her parents; and Victim Two was staying at a group home when she met the defendant on the street. Victim Two eventually abandoned the group home on her own volition, and asked the defendant if she could stay with her "for a few days." Had someone from the group home been involved in Victim Two's sex trafficking, it conceivable that person could have been subject to the enhancement for having been in supervisory control of Victim Two.

Although "custody, care or supervisory control" is to have a broad definition, as noted in § 2G1.3, comment. (n.2[A]), the defendant was neither a relative nor legal guardian of either victim. The application note specifically cites "teachers, day care providers, babysitters or other temporary caretakers" as examples of individuals deserving of this enhancement. The word "entrusted" is also referenced in comment. (n.2[A]), and it is crystal clear from the offense that no one entrusted the defendant to take care of either victim. She was never granted even temporary custody of either victim and the situation in which they came to live with her was informal, unofficial and not approved by anyone close to either victim. Ms. Barnes was never entrusted by any relative or legal guardian to be the caretaker of either victim. She cannot be considered a temporary caretaker. A caretaker is defined as person employed to look after people or animals. She was not employed as such and was not their legal guardian, babysitter, stepmother or relative. She was not legally responsible to provide care nor was she ever granted custody of either victim by any family court judge.

In a 2021 published case from the Ninth Circuit, *U.S. v. Halamek*, the Appellate Court referenced *United States v. Brooks*, 610 F.3d 1186, 1201 (9th Cir.

2010) in stating this enhancement will not be appropriate "**where the relationship between the defendant and the minor arose almost entirely from the crime itself.**" "**[F]or the enhancement to apply, the defendant must have held a position of parent-like authority that existed apart from conduct giving rise to the crime.**" The Appellate Court found that the application of the enhancement was not plainly erroneous in Halamek's case because the testimony established that Halamek played a caretaking role in the life of a victim.

The inclusion of this enhancement is a huge stretch of the interpretation of the guideline, and merely serves to suggest unwarranted, incremental punishment in the form of additional months through the advisory guidelines. As such, the PSR should be amended to eliminate the two-level increase pursuant to § 2G1.3(b)(1)(B).

### Objections to Paragraphs 67 and 76 of the PSR:

Paragraphs 67 and 76 cite the same SOC or guideline enhancement based on the use of a computer or interactive computer service as to both Groups One and Two (both victims). Each SOC results in a two-level increase per group, pursuant to § 2G1.3(b)(3)(A).

As to Group One/Victim One, paragraph 19 references an allegation that the defendant was showed photographs and videos of "people with wads of cash" to apparently show how much money she received from having sex. However, there is no mention any of these videos or photographs depicted anyone engaging in a commercial sex act for money, only images of people with money, and no mention of a computer being used is made. These images were purportedly shown to Victim One after she had already engaged in sexual activity with Cleon Kirlew (Barnes' former boyfriend), his brother and other men for money and/or presents on separate instances while at the Oakland Days Inn Hotel. As such, it does not appear these images had even little or any bearing in enticing, persuading or coercing Victim One in engaging in prohibited sexual conduct. There is no indication a computer or interactive computer device was used to communicate directly with the minor or with a person who exercises custody, care or supervisory control of the minor, as required by § 2G1.3, comment. (n.4), for the enhancement. To begin with, the defendant never had custody, cared for or had supervisory control for the runaway. Their relationship was transactional. Additionally, there is no indication in the PSR that the defendant used such a device to find men for the victim. Therefore, as to paragraph 67, the two-level increase, pursuant to § 2G1.3(b)(3), should not be applied.

As to Group Two/Victim Two, the complaint included a reference to the defendant accessing online ads (use of a computer or interactive computer service) for the second victim. The defendant admittedly used a computer or interactive computer to find male clients and/or "dates" for herself, as she also engaged in prostitution, but not for the minors.

Also, for this enhancement to apply as suggested in paragraph 76 of the PSR, is there evidence to confirm an interactive computer service was used on any specific instances to communicate directly with the minor, Victim 2, who was never under the defendant's care, custody or supervisory control? If not, this same enhancement should also not be applied as to Victim Two.

If the Court were to grant all the objections as suggested above, the defendant's adjusted offense level (paragraph 81) would be lowered to 40; there would still be a two-level increase, pursuant to § 3D1.4, for units as already reflected in paragraph 84. Consequently, her combined adjusted offense level (see paragraph 85) would be 42. After a three-level reduction for acceptance of responsibility, pursuant to § 3E1.1(a),(b), her total offense level would be 39. **According to the Sentencing Table in the guidelines manual, based on a total offense level of 39 and a criminal history category of II, the advisory guideline imprisonment range is 292 to 365 months. The defendant suggests the Court use this range as a starting point for her sentencing, prior to any downward variance for the reasons set forth below.**

### Request for Downward Variance, based on the Defendant's Personal Characteristics/18 U.S.C. § 3553(a) factors and her Cooperative Efforts

As the Court is aware, it must impose a sentence that is reasonable and must consider the Sentencing Guidelines in determining a reasonable sentence. A sentencing court must follow the three-step process set forth after the Supreme Court's decision in *Booker*. First, the court properly determines the guideline range (and in doing so will consider the objections filed by this defendant). Second, the Court determines whether to apply any of the advisory sentencing guidelines' departure policy. Third, the Court considers all the factors set forth in 18 U.S.C. § 3553(a) as a whole, including whether a variance is warranted. The result of the Court's three-step analysis, after making an individualized assessment, is to fashion a reasonable sentence that is "sufficient, but not greater than necessary," to fulfill the federal sentencing requirements of 18 U.S.C. § 3553(a).

The sentencing court must consider, but is not bound by, the applicable guideline sentencing range. A reasonable sentence that is "sufficient, but not greater than necessary," under 18 U.S.C. §3553(a), is the lowest possible sentence that accounts for all of the relevant statutory factors. Those statutory factors include but are not limited to the nature and circumstances of the offense and the history and characteristics of the defendant.

Although the defendant is only 31 years old and has a criminal history category of II (which is far from the worst category of VI), she faces a term of life imprisonment for her misconduct. It is respectfully suggested that some attention should be given to the uniquely sad history and personal characteristics of the defendant, in fashioning a sentence that is sufficient but not excessive for her. Specifically, the traumatic childhood and upbringing she experienced ultimately was a factor in how she began engaging in prostitution and which ultimately led to the charges herein. This information is not to be considered as an excuse for her serious behavior, but can serve to shed some light on how she has ended up with the instant convictions before Your Honor.

Ms. Barnes came from a broken home. Her parents were never married. Her mother, Sherrie Singletary, abused drugs during her pregnancy, and as a result, the defendant was born addicted to crack cocaine. (*The defendant's mother confirmed this information during her interview with the probation officer*). Consequently, the defendant's father was granted custody of the defendant during her infancy; however, the defendant subsequently lived with her mother or her aunts. From her early youth, she was awarded Social Security disability benefits. She was the victim of domestic violence while she was a pregnant 16-year-old, as her former boyfriend, Corey King, beat her, causing a black eye in addition to injuries to her mouth and face. Additionally, when Ms. Barnes was only 16 or 17 years old, she managed to get hired at a seedy, local strip club in Broward County, where she met codefendant Cleon Kirlew. Throughout the years, the two were involved in an on-again, off-again relationship during which he encouraged her to have sex with him and his friends while she was still a minor, and to have sex with others for money. He basically "groomed" Ms. Barnes. As a result of her upbringing and these experiences with abusive men who took advantage of her background, mental health issues and young age, many of the criminal sexual acts she engaged in seemed normal to her because it had become her way of life.

As noted in the PSR, the defendant has been treated and received psychotropic medication for bipolar disorder, antisocial personality disorder, attention deficit hyperactivity disorder and substance abuse disorder.  She has attempted suicide twice, once by cutting herself and another time by ingesting pills, and was twice committed to a state mental health facility pursuant to the Baker Act for erratic behavior, hallucinating and suffering paranoia as a result of using the drug known as "flakka."  Flakka, also known as "alpha-PVP," is known to be a dangerous, synthetic drug, similar to the street drug commonly known as bath salts.  She admittedly was a daily consumer of alcohol, and was sent to an alcohol detoxification unit while incarcerated in 2019.  The defendant also was a daily user of marijuana.

The defendant has experienced extremely traumatic, painful and abusive events since her infancy some of which can explain her instability, mental health and substance abuse issues and her eventual involvement in self-destructive behavior such as prostitution, and the instant sex trafficking offense.

The defendant has engaged in great efforts to cooperate with the government and should be awarded for these efforts, whether in the form of a downward variance from the advisory guideline range based on the 18 U.S.C. § 3553(a) factors, or pursuant to a § 5K1.1 and 18 U.S.C. § 3553(e) motion filed by the government. Defendant is cooperating with the Government and is willing to testify against her co-defendant, with whom she was once intimately involved with.

Based on the objections raised, the defendant's personal characteristics and compelling childhood and background that no child should have to experience, all the facts of the criminal case as well as her cooperative efforts, a sentence of approximately seven or eight years imprisonment (but  no more than 15 years) is respectfully being requested for this defendant.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this 14th day of February, 2022, on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

MANUEL GONZALEZ, JR., ESQ.

Attorney for Defendant

121 Alhambra Plaza, Suite 1500

Coral Gables, Florida 33134

(305) 444-1400

(305) 938-5009 (FAX)

Mannylaw7@yahoo.com (email)

BY: _/s/Manuel Gonzalez, Jr._____

    MANUEL GONZALEZ, JR., ESQ.

    FLORIDA BAR NO. 397997